UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| APPROXIMATELY THIRTY THOUSAND DOLLARS ($30,000.00) U.S. CURRENCY; | ) ) | |
| | ) | |
| APPROXIMATELY EIGHTY-SIX THOUSAND, ONE HUNDRED AND FIFTY DOLLARS ($86,150.00) IN U.S. CURRENCY; | ) ) ) | |
| | ) | |
| APPROXIMATELY TEN THOUSAND, FIFTY-FOUR DOLLARS ($10,054.00) IN U.S. CURRENCY; | ) ) ) | |
| | ) | |
| APPROXIMATELY NINE THOUSAND, NINE HUNDRED DOLLARS ($9,900.00) U.S. CURRENCY; | ) ) ) | |
| | ) | |
| APPROXIMATELY FOUR THOUSAND, ONE HUNDRED AND EIGHTY-SEVEN DOLLARS ($4,187.00) U.S. CURRENCY; and | ) ) ) | |
| | ) | |
| APPROXIMATELY ONE THOUSAND, THIRTY-EIGHT DOLLARS ($1,038.00) U.S. CURRENCY, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT FOR FORFEITURE

COMES NOW Plaintiff the United States of America, by and through its attorneys, Richard

G. Callahan, United States Attorney for the Eastern District of Missouri, and Richard E. Finneran,

Assistant United States Attorney for said district, and for its Verified Complaint for Forfeiture

states as follows:

1

## NATURE OF THE ACTION

1.       This is a civil action in rem brought by the United States, pursuant to 18 U.S.C. § 981(a), seeking forfeiture of all right, title, and interest in the above-captioned defendant property, which is property traceable to proceeds of knowingly shipping, transporting, receiving, possessing, selling, distributing, and purchasing contraband cigarettes and/or property involved in laundering and conspiring to launder the proceeds of said illegal activities and/or property of equivalent value, all as set forth in detail below.

## JURISDICTION AND VENUE

2.       This Court has jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 1331, 1345, and 1355 because this is a civil action arising under the laws of the United States, because it is a proceeding of forfeiture, and because it has been brought by the United States.

3.       This Court has jurisdiction over the parties pursuant to 28 U.S.C. §§ 1345 and 1355 because this is a proceeding for forfeiture, and because it has been brought by the United States.

4.       Venue is placed in the Eastern District of Missouri pursuant to 28 U.S.C. § 1355 because an act giving rise to the forfeiture occurred in the Eastern District of Missouri.

## THE DEFENDANT PROPERTY

5.       On or about March 3, 2016, the below defendant property was seized by the Bureau of Alcohol, Tobacco, Firearms and Explosives during the execution of various search warrants:

      i.       Approximately $30,000.00 in U.S. Currency from the residence of Ivan Voychak at 601 Surf Avenue, Apartment 13H, in Brooklyn, New York;

      ii.      Approximately $86,150.00 in U.S. Currency from the residence of Vladimir Shamis at 3825 Cypress in Brooklyn, New York;

      iii.     Approximately $10,054.00 in U.S. Currency from the residence of Sergei Kischenko at 123 Wainwright in Brooklyn, New York;

iv.     Approximately $9,900.00 in U.S. Currency from the residence of Yakov Pisman at 3096 Brighton 6th Street, Apartment D-8, in Brooklyn, New York;

v.      Approximately $4,187.00 in U.S. Currency from the residence of Ivan Voychak at 601 Surf Avenue, Apartment 13H, in Brooklyn, New York; and

vi.     Approximately $1,038.00 in U.S. Currency from the residence of Yakov Pisman at 3096 Brighton 6th Street, Apartment D-8, in Brooklyn, New York.

## THE CONSPIRACY

6.      On February 18, 2016, a Grand Jury in the Eastern District of Missouri indicted fourteen defendants on charges of conspiracy to violate Title 18, United States Code, Sections 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), and 2342(a) in Case No. 4:16-cr-00066 RLW (the "Indictment").

7.      Pursuant to Title 18, United States Code, Section 2341, "contraband cigarettes" means a quantity in excess of 10,000 cigarettes (or 50 cartons of cigarettes), which bear no evidence of the payment of applicable state or local cigarette taxes in the state or locality where such cigarettes are found.

8.      It is common for cigarettes to be packaged as follows: twenty (20) cigarettes in a pack and ten (10) packs of cigarettes in one carton, thirty (30) cartons in a "half case" and Sixty (60) cartons in a master case.

9.      At all times relevant to the indictment, the State of Missouri, St. Louis County, Missouri, city of St. Louis, Missouri, State of New York, and the City of New York required that a tax stamp be affixed to each package of cigarettes as proof of tax payments.

10.     S.C. is a national wholesale club with headquarters in Bentonville, Arkansas and with stores located throughout the United States including the States of Missouri and Georgia.

Consumers may purchase products at S.C., including cigarettes provided they have a membership in S.C.

11.     C.W. is a national wholesale club with headquarters in Issaquah, Washington and with stores located throughout the United States including the States of Missouri and Georgia. Consumers may purchase products at C.W., including cigarettes provided they have a membership at C.W.

12.     At all times relevant to this complaint, the cigarette tax in Missouri was substantially lower than the cigarette tax in New York. New York imposed a combined state-local tax of $5.85 per package of cigarettes compared with Missouri which imposed a combined state-local tax in the City of St. Louis of 24 cents per package and combined state-local tax in St. Louis County of 22 cents per package of cigarettes.

13.     It was the purpose of the conspiracy for the co-conspirators to enrich themselves by purchasing large quantities of cigarettes in Missouri and Georgia, where the state tax on cigarettes is substantially lower than in New York, transporting those cigarettes to New York, selling those cigarettes without paying the New York cigarette tax, and concealing said transactions, resulting in a substantial profit.

14.     Beginning in or before 2011, within the Eastern District of Missouri and elsewhere, the co-conspirators did knowingly and willfully combine, conspire, confederate and agree to commit certain offenses against the United States, to wit:

   a.  to knowingly transport, receive, possess, sell, distribute and purchase, in excess of 10,000 contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341, to wit, a quantity of more than 10,000 cigarettes which bore no evidence of the payment of applicable state cigarette taxes in New York in violation of 18 U.S.C. § 2342(a);

b.  to engage in financial transactions knowing that the property involved in said offenses was the proceeds of some form of unlawful activity, knowing that the transactions were designed, at least in part, to promote the carrying on of the specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(A)(i); and

c.  to engage in financial transactions knowing that the property involved in said offenses was the proceeds of some form of unlawful activity, knowing that the transactions were designed, at least in part, to conceal and disguise the nature, the location, the source, the ownership, and the control of said proceeds of the specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

15.  It was further part of the conspiracy that the co-conspirators deposited cash into banks where cigarette buying accounts had been established in order to fund the purchase of cigarettes.

16.  It was further part of the conspiracy that the co-conspirators purchased substantial quantities of cigarettes utilizing cash and/or a combination of other forms of payment in order to fund the purchase of cigarettes.

17.  It was further part of the conspiracy that the co-conspirators utilized fictitious companies and corporations to purchase substantial quantities of the cigarettes.

18.  It was further part of the conspiracy that the co-conspirators obtained multiple business memberships from one or both of the S.C. or C.W. warehouse chain stores, and multiple membership cards for multiple co-conspirators.

19.  It was further part of the conspiracy that once the co-conspirators obtained a membership account that had been initiated at one or both of the S.C. or C.W. warehouse chain stores, purchases were made on the membership business account at any of the store locations for that warehouse chain.

20.  It was further part of the conspiracy that once the co-conspirators obtained the bulk amounts of the Missouri and/or Georgia tax stamped cigarettes they would be transported by

private vehicle, rental vehicle, semi-tractor trailer, or shipped via commercial companies like UPS and FedEx.

21.     It was further part of the conspiracy that the co-conspirators utilized storage facilities, as well as garages, to store and/or repackage bulk quantities of Missouri or Georgia taxed stamped cigarettes.

22.     It was further part of the conspiracy that the co-conspirators utilized telephones and other means to communicate during the life of the conspiracy.

23.     It was further part of the conspiracy that the co-conspirators would utilize motor vehicles and commercial airlines for the purpose of traveling throughout the United States to accomplish and attempt to accomplish the scheme.

24.     It was further part of the conspiracy that the co-conspirators developed fictitious corporations/businesses to establish bank accounts at a number of financial institutions, both in Missouri and New York. Deposits into these accounts were often structured (i.e., in amounts just under the mandated reporting requirements of the Bank Secrecy Act).

25.     It was further part of the conspiracy that existing, otherwise legitimate companies would fund the purchase of cigarettes by causing funds to be transferred from their bank accounts into accounts that were then used to fund, in combination with cash and with funds from other accounts, the purchase of cigarettes, thus making these companies and their owners and operators co-conspirators.

26.     The accounts involved in the conspiracy, can be grouped into two general categories. The first, denominated "Purchase Accounts," have been used by members of the conspiracy to make purchases of cigarettes from one or more stores in Georgia and Missouri in anticipation of their transportation to other jurisdictions.

27.     Each of these Purchase Accounts has an associated debit card that was issued upon opening of the account.

28.     Funds from these Purchase Accounts have been commingled with large quantities of cash at the point of sale in order to purchase additional cigarettes.

29.     The second category, denominated "Funding Accounts," have been used to fund one or more the Purchase Accounts, which funds have in turn been used, in combination with cash, to purchase cigarettes at the point of sale.

30.     Large amounts of cash have been commingled by conspiracy members with funds from the Purchase Accounts to fund the purchase of cigarettes in Missouri and Georgia.

31.     The cash involved in those transactions represents the proceeds of the conspiracy.

32.     It was not uncommon for amounts of cash slightly under the sum of $10,000.00 to be used by members of the conspiracy either to purchase cigarettes at point of sale or to make deposits into the accounts.

33.     Such activity is indicative of structuring to avoid applicable reporting requirements and of money laundering and is further suggestive of the criminal origin of those cash funds.

34.     The defendant property that was seized has been involved in money laundering and/or a money laundering conspiracy in violation of Title 18, United States Code, Sections 1956 and a conspiracy to traffic in counterfeit cigarettes in violation of Title 18, United States Code, Section 2342.

35.     The defendant property has been involved in the conspiracy either because they constitute proceeds of specified unlawful activity (including contraband cigarette trafficking in violation of Title 18, United States Code, Section 2342) or because they have been commingled with such proceeds, or funds of a foreign origin, in order to conceal the nature, location, source,

ownership, or control of the proceeds of the conspiracy, to avoid a transaction reporting requirement under federal law, and/or to promote the carrying on of the conspiracy's unlawful activities.

36.     As set forth in Section 1956(a)(1), a financial transaction is considered to involve the proceeds of a specified unlawful activity if it is part of a set of dependent transactions, any one of which involves the proceeds of specific unlawful activity, and all of which are part of a single plan or arrangement.

## COUNT I
### *Forfeiture as Property Involved in Money Laundering and Money Laundering Conspiracy*
### (Against All Defendants)

37.     Each of the foregoing allegations is hereby incorporated by reference as if fully recited herein.

38.     Title 18, United States Code, Section 981(a)(1)(A) provides that any property, real or personal, involved in a transaction or attempted transaction in violation of Section 1956 of Title 18, and any property traceable to such property, shall be subject to civil forfeiture.

39.     Section 1956(h) makes it a crime to conspire to commit an offense described in that section.

40.     Section 1956(a)(1)(A) makes it a crime for anyone, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, to conduct or attempt to conduct a financial transaction which in fact involves proceeds of a specified unlawful activity with the intent to promote the carrying on of specified unlawful activity.

41.     Section 1956(a)(1)(B) makes it a crime for anyone, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, to conduct or attempt to conduct a financial transaction which in fact involves proceeds of a specified

unlawful activity, knowing that the transaction is designed, in whole or in part, to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity or to avoid a transaction reporting requirement under federal law.

42.     "Specified unlawful activity" is defined in Section 1956 and its cross-references to include money laundering in violation of Title 18, United States Code, Sections 1956(a)(1)(A) and 1956(a)(1)(B), money laundering conspiracy in violation of Title 18, United States, Code, Section 1956(h), and cigarette trafficking in violation of Title 18, United States Code, Section 2342(a).

43.     The defendant property constitute property involved in money laundering and in a money laundering conspiracy in violation of Title 18, United States Code, Sections 1956(a)(1)(A), 1956(a)(1)(B), and 1956(h).

WHEREFORE the United States prays that this Court decree that all right, title, and interest in the defendant properties be condemned and forfeited to the United States of America, and for such other and further relief as the Court deems just and proper.

## COUNT II
### *Forfeiture as Proceeds of Conspiracy to Traffic in*
### *Contraband Cigarettes and to Commit Money Laundering Offenses*
### (Against All Defendants)

44.     Each of the foregoing allegations is hereby incorporated by reference as if fully recited herein.

45.     Title 18, United States Code, Section 981(a)(1)(C) provides that any property, real or personal, which constitutes or is derived from proceeds traceable to a "specified unlawful activity" or conspiracy to commit such offense, shall be subject to civil forfeiture.

46.     "Specified unlawful activity" is defined in Section 1956 and its cross-references to include money laundering in violation of Title 18, United States Code, Sections 1956(a)(1)(A) and

1956(a)(1)(B), money laundering conspiracy in violation of Title 18, United States, Code, Section 1956(h), and cigarette trafficking in violation of Title 18, United States Code, Section 2342(a).

47.     The defendant property constitutes proceeds of one or more specified unlawful activities or of a conspiracy to commit one or more specified unlawful activities.

WHEREFORE the United States prays that this Court decree that all right, title, and interest in the defendant properties be condemned and forfeited to the United States of America, and for such other and further relief as the Court deems just and proper.

Dated: August 2, 2016                                    Respectfully submitted,

RICHARD G. CALLAHAN
United States Attorney

*/s/ Richard E. Finneran*
RICHARD E. FINNERAN, #60768
Assistant United States Attorney
111 South 10th Street, Suite 20.333
Saint Louis, Missouri 63102
Telephone:   (314) 539-2200
Facsimile:    (314) 539-2287
*richard.finneran@usdoj.gov*

## VERIFICATION

I, Kathleen Aug, hereby verify and declare under penalty of perjury that I am a Special

Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, that I have read the

foregoing Verified Complaint and know the contents thereof, and that the matters contained in the

Verified Complaint are true to my own knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official

files and records of the United States, information supplied to me by other law enforcement

officers, as well as my investigation of this case, together with others, as a Special Agent with the

Bureau of Alcohol, Tobacco, Firearms and Explosives.

Pursuant to 28 U.S.C. ' 1746, I declare under penalty of perjury that the foregoing is true and

correct.

Executed on: _____8·2·16_____

(date)

Kathleen Aug
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

11